IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 4:18-CR-00013-BO-1
NO. 4:20-CV-00168-BO

| | |
|---|---|
| DAMIEN LAMONTE BROWN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

This matter comes before the court on petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (DE 116) and respondent's motion for summary judgment (DE 136) pursuant to Federal Rule of Civil Procedure 56(a). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants respondent's motion for summary judgment and denies petitioner's § 2255 motion.

## BACKGROUND

On March 28, 2018, petitioner was charged in the United States District Court for the Eastern District of North Carolina with conspiracy to possess with the intent to distribute one hundred (100) grams or more of heroin, being a felon in possession of a firearm and ammunition, and aiding and abetting possession with the intent to distribute one hundred (100) grams or more of heroin. See (DE 1). Petitioner's family subsequently retained attorney Geoffrey W. Hosford ("Hosford") to represent petitioner, and Hosford filed a notice of appearance in petitioner's criminal action on May 14, 2018. ((DE 139-1) ¶ 3). Hosford subsequently met with petitioner on several occasions and

discussed the following: the strength of the government's evidence against petitioner; whether petitioner wished to accept a plea offer extended by the government or to proceed to trial; petitioner's estimated advisory guideline sentencing range; trial procedure; potential defenses; potential defense witnesses, including whether petitioner should testify in his own defense; and the potential benefits and detriments to his defense if he decided to testify. (Id. ¶¶ 9-14).

In the course of their meetings, Hosford advised petitioner that Hosford believed any potential benefit derived from petitioner testifying in his own defense would be far outweighed by the potential damage. (Id. ¶ 15). Hosford informed petitioner that his opinion was based on petitioner's prior criminal history, his inability to produce documents or explanations as to his legitimate source of funds for his assets, and his inability to explain his relationship with the government's witnesses.[1] (Id. ¶ 16). Hosford declares that petitioner "broached the subject of his testifying before his trial and during his trial," and that Hosford recommended that petitioner not testify each time the issue was raised. (Id. ¶¶ 17, 18). Petitioner ultimately did not testify in his defense at trial. (Id. ¶ 19).

In the course of their pretrial discussions, petitioner provided Hosford with the names of potential witnesses for his defense–including Tye Drew ("Drew"). (Id. ¶ 21). In response, Hosford contacted a private investigator to interview Drew, and provided specific questions for the investigator to ask. (Id. ¶¶ 24, 25). The investigator interviewed Drew in August 2018 at Drew's place of incarceration. (Id. ¶ 24). Although Drew was willing to testify at petitioner's trial, Hosford did not believe Drew's testimony would assist in petitioner's defense because Drew had an extensive

---

[1] "The Government introduced evidence of rap music videos in which Mr. Brown appeared with several of the Government's witnesses." See ((DE 139-1) ¶ 16 n. 2).

2

criminal history and could offer testimony only as to a brief window of time due to the fact that he had been incarcerated for almost the entire time period of petitioner's alleged criminal conduct. (Id. ¶ 28). Hosford also based his decision on the fact that while Drew offered to testify that controlled substances found during a March 2016 search of his residence at 109 Daughety Court did not belong to petitioner, he would not disclose how he knew of the presence of the controlled substance at the house. (Id.) Specifically, Drew failed to identify the person to whom the controlled substances belonged and did not claim that he or his roommate, Derrick Davis, possessed them. (Id.) After discussing his concerns regarding Drew's interview with petitioner, Hosford decided not to call Drew as a witness at trial. (Id. ¶¶ 29-30).

Following a jury trial, petitioner was convicted of conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846, 851 (count 1), possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (2012) (count 2), and possession with intent to distribute 100 grams or more of heroin and aiding and abetting, in violation of 18 U.S.C. § 2 (2012) and 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 851 (count 3). See United States v. Brown, 777 F. App'x 669 (4th cir. 2019). On December 7, 2018, the court sentenced petitioner to concurrent terms of 360 months' imprisonment on counts 1 and 3, and a concurrent term of 120 months' imprisonment on count 2. Id. On September 26, 2019, the United States Court of Appeals for the Fourth Circuit affirmed petitioner's sentence. Id. at 670.

On September 2, 2020, petitioner filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Petitioner alleged that he received ineffective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution when Hosford did

3

not call Drew, a potentially exculpatory witness, at trial and when Hosford failed to "[a]dequately consult[] with [him] on the Benefits of Testifying in his Own Defense and to Present His Testimony at Trial." ((DE 116), p. 4). On the same date, petitioner also filed a motion to expand the record to include exhibits attached to his motion. The exhibits included a declaration from petitioner and an affidavit from Drew. In his declaration, petitioner provided the following proposed trial testimony:

> I was not guilty of what I was being accused of and I was being used as an scapegoat for cooperators who would say anything to keep from being sentenced to a long term of imprisonment. I would have told the jury that there is no evidence that I had any dealings with these people, because I didn't deal with them. I would have stressed that the only evidence that we even knew each other came from music videos and cd album covers related to my efforts to launch a record label. I would have explained that I promoted shows and earned income from those shows. I would have told the jury that there was no proof that I sold anybody any drugs, only the word of mouth from people who actually got caught with drugs and are facing a lot of time and seek to shift the blame to me. This is true, even with respect to the drugs that were found in Derrick Davis' home. I was never seen with drugs there and I only stayed there a short period of time before moving to Atlanta. Finally, I would have testified that I came to New Bern to visit my kids, family, and friends, but never brought anyone any drugs.

((DE 116-5) ¶ 5). Likewise, Drew in his affidavit provided his purported trial testimony, which included the fact that he resided at 109 Daughety Court in New Bern, North Carolina–a house owned by Derek Davis. ((DE 116-5) ¶¶ 7-8). Drew further attested that petitioner did not maintain a residence or interest at the house on Daughety Court, that petitioner did not have anything to do with the heroin discovered at the house on Daughety Court, and that petitioner had moved out of the house on Daughety Court "approximately a year or two prior to the discovery of the Heroin" in 2016. (Id. ¶¶ 9, 15-16, 19).

4

On January 8, 2021, respondent filed a motion for summary judgment pursuant to Rule 56(a). Respondent attached to his motion a declaration from attorney Hosford. See (DE 139). Petitioner next filed a motion to strike respondent's motion as untimely. On June 15, 2021, the court granted petitioner's motion to expand the record, denied his motion to strike, and provided petitioner additional time to respond to respondent's motion for summary judgment. Petitioner filed his response on July 2, 2021.

## DISCUSSION

A. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In determining whether a genuine issue of material fact exists, a court must view the evidence and the inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

B. Analysis

To demonstrate ineffective assistance of counsel, a petitioner must show that his counsel's representation was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Specifically, the Fourth Circuit has provided:

> Under *Strickland*, a criminal defendant must show that his counsel provided constitutionally deficient performance, "meaning that the identified acts or omissions were outside the wide range of professionally competent assistance" (the performance prong). *Grueninger v. Dir., Va. Dep't of Corr.*, 813 F.3d 517, 524 (4th Cir. 2016) (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052) (internal quotation marks omitted). We accord broad deference to counsel's choices in recognition of the "wide latitude counsel must have in making tactical decisions." *Id.* at 529 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). To succeed on an ineffective assistance claim, the defendant also must show that he was prejudiced by counsel's deficient performance, namely, that there is a reasonable probability that the outcome of the trial would have been different absent counsel's error (the prejudice prong). *Id.* at 524.

United States v. Pressley, 990 F.3d 383, 388 (4th Cir. 2021). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Pursuant to 28 U.S.C. § 2255(b), a district court must hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). "Although whether to hold a hearing ordinarily is a matter of district court discretion, . . . a hearing is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claim." United States v. Mayhew, 995 F.3d 171, 176 (4th Cir. 2021) (internal citations omitted).

In his first claim, petitioner contends that Hosford provided ineffective assistance because he did not call Drew, a potentially exculpatory witness, at trial. "[T]he decision whether to call a defense witness is a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks, and one to which [the court] must afford ... enormous deference." United States v. Terry, 366 F.3d 312, 317 (4th Cir.2004) (internal quotation omitted); Strickland, 466 U.S.

6

at 689 (stating that counsel must have a wide latitude in making tactical decisions). Trial counsel is given "wide latitude in determining which witnesses to call as part of their trial strategy." See United States v. Dyess, 730 F.3d 354, 364 (4th Cir. 2013).

Here, Hosford made the decision not to call Drew as a witness at petitioner's trial after reviewing Drew's responses to interview questions posed to him by a private investigator. ((DE 139-1) ¶¶ 24, 26, 28). Hosford based his belief that Drew's testimony would not assist in petitioner's defense on the fact that Drew was incarcerated for almost the entire period of petitioner's alleged criminal conduct, that Drew had an extensive criminal history, and that Drew would not answer questions related to the ownership of the heroin found at 109 Daughety Court. (Id. ¶ 28). The court finds that Hosford's tactical decision not to call Drew under these circumstances fell "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; Powell v. Kelly, 562 F.3d 656, 670 (4th Cir. 2009); Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977); see also, Allen v. United States, No. 4:05-340, 2008 WL 11329505, at *2 (D.S.C. Aug. 21, 2008), appeal dismissed, 315 F. App'x 485 (4th Cir. 2009). Thus, petitioner has not established that his counsel acted unreasonably.

In his second claim, petitioner contends Hosford failed to "[a]dequately consult[] with [him] on the Benefits of Testifying in His Own Defense and to Present His Testimony at Trial." See ((DE 116), p. 4). It is well established that a defendant in a criminal case has a constitutional right to testify on his own behalf and that the defendant retains the ultimate authority to decide whether or not to do so United States v. McMeans, 927 F.2d 162, 163 (4th Cir. 2001) (citing Rock v. Arkansas, 483 U.S. 44, 51 (1987); Jones v. Barnes, 463 U.S. 745, 751 (1983)). "To waive the right, all the

7

defendant needs to know is that a right to testify exists." Id.; see also, United States v. Banker, No. 7:15-cr-00023 7:19-cv-81378, 2021 WL 480009, at * 5 (W.D. Va. Feb. 10, 2021).

Here, the record reflects that Hosford expressly informed petitioner of his right to testify at trial. See ((DE 116-5) ¶ 3; (DE 139-1) ¶¶ 13-20)). Regarding petitioner's assertion that he did not know he still had the right to testify if he disagreed with his attorney's advice, he presents no evidence to support his claim. For instance, petitioner does not assert that he communicated to his counsel that he disagreed with counsel's advice not to testify, or that his counsel otherwise coerced him into not testifying at trial. Rather it appears that petitioner relied upon his attorney's advice, and such advice is a tactical decision which may not be challenged as evidence of an ineffective assistance of counsel claim. See Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002) ("Absent evidence of coercion, legal advice concerning the defendant's right to testify does not constitute [ineffective assistance of counsel]") (quotation omitted). Petitioner's conclusory allegations otherwise are insufficient to establish that his counsel acted unreasonably. See Dyess, 730 F.3d at 359 ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court."). Based upon the foregoing, petitioner has not established that his counsel acted unreasonably.

The court next determines whether petitioner can establish prejudice for either of his ineffective assistance of counsel claims. In support of the prejudice prong of the Strickland test, petitioner asserts that the cumulative effect of his own testimony, along with the testimony from Drew, would have been "outcome determinative" if they had been called as witnesses at trial. ((DE 116-1), p. 11). The court disagrees. Even with the purported testimony from both petitioner and Drew, petitioner cannot show any reasonable probability that the outcome of the trial would have

8

been different in light of the overwhelming evidence of petitioner's guilty produced at trial. See Strickland, 466 U.S. at 694.

For instance, several law enforcement officers testified at trial regarding a November 27, 2015 traffic stop in New Bern, North Carolina during which officers found in petitioner's vehicle a loaded gun, over $5,000.00 in cash, and a receipt in petitioner's name for a press machine which could be used to re-press heroin into bricks. ((DE 74), pp. 15, 27, 32, 36, 40, 42). Further, five separate witnesses, including petitioner's co-defendant Derrick Davis, testified that they had either observed petitioner in possession of large amounts of heroin or had personally dealt heroin supplied by petitioner. (Id. pp. 50, 53, 60, 91-92, 94, 100; (DE 75), pp. 25; 59-62; 64; 67; 71; 76-77; 79; 135; 151; 155). To the extent petitioner asserts that he would have testified that the aforementioned witnesses were only attempting to shift the blame away from themselves, Hosford used this theory as a method of impeachment on cross-examination at trial. See (DE 74, pp. 72, 76; (DE 75), pp. 85-88, 101-102). Additionally, Drew's purported testimony that he did not know petitioner to be a drug dealer would not negate the fact that the government witnesses did. Petitioner also does not explain his relationship to the government's witnesses.

The overwhelming evidence presented at trial additionally included testimony from several witnesses indicating that documentation found at 109 Daughety Court during the March 4, 2016 search, including petitioner's birth certificate and luggage, connected petitioner to the residence where a large amount of heroin and drug paraphernalia was discovered. ((DE 74), pp. 120, 136; 139-40; 142-43; 145; 149-51; (DE 75), pp. 6; 19-20; 27-31; 36). Further, the jury heard testimony that petitioner did not report any income or file a tax return for the years 2012-2015, yet purchased a porche for approximately $140,000.00. ((DE 75), pp. 118, 127-28). Petitioner has not produced

documentation as to any legitimate source of funds for his assets. Moreover, both petitioner and Drew would have been impeached by the government due to their extensive criminal history, which for petitioner included several prior drug-related convictions. See (DE 86), ¶¶ 30, 33, 34, 36, 38, 39).

Petitioner offers little to refute the evidence presented at trial, aside from his own self-serving denials, and there is no indication that testimony from himself or Drew would have been sufficient to overcome the extensive evidence of petitioner's guilt produced at trial. Petitioner simply has not met his burden of establishing a reasonable probability that the outcome of the trial would have been different if he or Drew had testified. Based upon the foregoing, petitioner cannot show prejudice, and cannot establish an ineffective assistance of counsel claim on either ineffective assistance of counsel ground. See Smith v. United States, No. 1:17CV94, 1:15CR166-1, 2020 WL 1332260, at *6 (M.D.N.C. Mar. 23, 2020); United States v. Prosise, No. 3:07CR322-HEH, 2014 WL 2921926, at *7 (E.D. Va. June 27, 2014), appeal dismissed, 589 F. App'x 82 (4th Cir. 2014); United States v. Crum, 65 F. Supp.2d 348, 351 (D. Md. 1999), appeal dismissed, 238 F.3d 415 (4th Cir. 2000). The court finds no need to conduct an evidentiary hearing. See Mayhew, 995 F.3d at 176.

## CONCLUSION

In summary, the court GRANTS respondent's motion for summary judgment (DE 136) and DENIES petitioner's § 2255 motion (DE 116). A certificate of appealability is DENIED. See 28 U.S.C. § 2253(c)(2). The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 14 day of September, 2021.

*Terrence Boyle*
TERRENCE W. BOYLE
United States District Judge